UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MEL STACKPOOLE,

    Defendant.

                                  /

Hon. Terrence G. Berg

Case No. 25-cr-20500

## GOVERNMENT'S SENTENCING MEMORANDUM

Mel Stackpoole owned and operated Great Lakes Charter Training (GLCT) – a maritime training school that offered United States Coast Guard approved training courses, required for persons to obtain their merchant mariner credentials (MMC). Stackpoole changed and inflated students' test scores from failing to passing and issued them course completion certificates, falsely signifying the students' successful completion of the course to the Coast Guard. Stackpoole has endangered the safety of countless boaters by facilitating the issuance of credentials to unskilled and unqualified mariners.

On August 12, 2025, Stackpoole pleaded guilty to one count of Knowing Falsification of a Record with the Intent to Impede the Proper Administration of a Matter Within the Jurisdiction of the Executive Branch of the United States, a felony,

1

in violation of 18 U.S.C. § 1519; he is now scheduled to appear for sentencing at 2:00 p.m. on December 18, 2025. On December 10, 2025, the defendant filed a sentencing memorandum requesting a variance to a non-custodial sentence. (ECF no. 16.) The Government has thoroughly considered the defendant's filing in the preparation of this sentencing memorandum. Consistent with the parties' Rule 11 Plea Agreement, the Government recommends that the Court impose a custodial sentence at or near the midpoint of the guideline range.

## I.     BACKGROUND AND OFFENSE CONDUCT

The United States adopts the timeline of relevant case events, the description of the charge to which Defendant Stackpoole has pleaded guilty, and the statement of the offense conduct detailed by the Probation Department in the revised Presentence Investigation Report (PSR ¶¶ 1-14) dated December 2, 2025.

## II.    GUIDELINES RANGE

The Probation Department has calculated Stackpoole's sentencing guideline range to be 8-14 months based on an offense level of 11 and a criminal history category of I. (PSR ¶ 63.) In calculating the guideline range, the Probation Department declined to apply the Aggravating Role enhancement under United States Sentencing Guideline (USSG) § 3B1.1(c), despite the parties' recommendation in Paragraph 8.C. of the Rule 11 Plea Agreement that it *does* apply. (PSR ¶ 66; ECF No. 6, PageID.15.)

The Government objected to the PSR in this regard, and it maintains its position, as stated in the Addendum to the PSR. (PSR, p.A-1.) Pertinently, Stackpoole himself has admitted, through the aforementioned joint recommendation in the Plea Agreement, that he was the organizer, leader, manager, or supervisor of other participants in the criminal activity, and he stands by this admission and the application of the enhancement in his Sentencing Memorandum. (ECF No. 16, PageID.70-71.) Consistent with Stackpoole's admission is the proffer of one of Stackpoole's instructors who admitted to passing over two hundred students on exams where they would have otherwise failed, based on a tacit understanding with Stackpoole that there was a guarantee that students who took GLCT courses would pass the course and receive a certificate. This directly counters the Probation Department's assessment that the instructors "denied ever changing answers themselves." (PSR, p.A-2.) Respectfully, the Probation Department's flawed reading of the discovery provided by the Government cannot overrule the defendant's admission and the parties' agreement that the Aggravating Role enhancement applies. Additionally, the fact that the Government, in its discretion, did not charge other participants, does not disqualify the application of the enhancement to the defendant's conduct.

Further, because the Probation Department declined to apply the Aggravating Role enhancement, the defendant has qualified for the Zero-Point Offender

3

adjustment under USSG § 4C1.1. The Government maintains its objection to the contrary. (*See* PSR, p.A-1.)

## III. SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), sets forth a number of factors that the Court shall consider in sentencing the defendant. These factors are described below, numbered as corresponding to Section 3553(a):

**(1) The nature and circumstances of the offense, and the history and characteristics of the defendant.**

Stackpoole comes before the court at the age of 62 in good physical and mental health. He is a single male and a father of three adult children. While Stackpoole dropped out of high school to work pending the arrival of his first child, he managed to attain a career as a United States Coast Guard Merchant Marine Officer and eventually the owner, operator, and lead instructor of Great Lakes Charter Training, at which he taught for over 30 years. While defense counsel has emphasized these same points to garner some leniency, the Government highlights them because they describe a person who should be above the conduct in this case.

The Coast Guard's licensing and credentialing laws and regulations serve to ensure that merchant mariners have the proper and necessary training, experience, and qualifications to operate and perform work on commercial vessels in a safe and competent manner, consistent with public safety. Stackpoole undermined and

4

demonstrated disdain for the entire Coast Guard regulatory system by deliberately disregarding those laws and regulations.

The Coast Guard's National Maritime Center's course and training requirements are strict, as they should be in the interest of safety. Maritime schools sometimes had difficulty maintaining those requirements. Yet, Great Lakes Charter Training was reportedly known in the industry to successfully teach a master's level course in five days. GLCT acquired a reputation for having no difficulty passing students, where no student was known to fail, despite the high failure rate nationwide.

Stackpoole provided students enrolled in the course with less than 50 hours of classroom instruction, rather than the required 80 hours. During the course, Stackpoole instructed students to provide false information regarding their prior sea service, medical history, and recreational drug use on the MMC application. He also improperly provided the students with the answers to certain examination questions, corrected the students' answers to test questions, and inflated the students' test scores in order to reflect passing, rather than failing, grades. At the end of the course, Stackpoole issued course completion certificates to the students, falsely signifying their successful completion of the course, for submission to the USCG as part of their MMC applications. Other GLCT instructors did the same, under Stackpoole's supervisions.

Stackpoole not only demonstrated disregard and disdain for the Coast Guard's law and regulations, but also for the safety of all others that traverse the waterways for work or leisure. As an experienced USCG Merchant Marine Officer, and course instructor, he knew the dangers that the waterways could impose, yet he operated GLCT at a 100% pass/success rate and sent unqualified and unskilled mariners "out to sea," all for profit.

> **(2) The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide defendant with appropriate education or vocational training.**

Stackpoole's crime may present as a mere document crime or regulatory violation, but it is much more than that. It is a crime against safety. Moreover, it is important to understand that this is not a "victimless" crime. The most direct victim, by the language of the charged statute, is the United States Coast Guard, as Stackpoole defrauded the Coast Guard into issuing merchant mariner credentials to unqualified individuals. But the impact of Stackpoole's crime extends far beyond that. Consider those unqualified individuals, who obtained merchant mariner credentials and entered a workforce in which they did not have the skills or knowledge to fully participate and safely perform their jobs. Stackpoole essentially set them up for failure: at the least they might struggle to perform their jobs or have poor work-related reputations; at the worst they could make costly mistakes,

6

possibly resulting in serious injury or death. Stackpoole's crime then extends further, beyond the individual mariners, to the safety of all others on the waterways who might work with or cross literal paths with the unqualified mariners. There are countless unknown victims, actual and potential, all whose safety is at risk as a result of Stackpoole's conduct.

With respect to deterrence, the United States acknowledges that specific deterrence might not weigh as heavily as other factors in fashioning an appropriate sentence, particularly since Stackpoole has closed and divested of Great Lakes Charter Training. He does, however, remain employed in the industry as a private boat captain. Thus, some deterrence remains necessary in this regard. The Government would ask the Court, at the very least, to adopt the special condition recommended by the Probation Department in ¶ 85 of the PSR, which would require Stackpoole to have all employment pre-approved by the Probation Department, and would prohibit him from preparing or assisting in the preparation of any testing, certification, or licensing or from working or volunteering at a location where MMC licensing classes are being offered.

The sentence must also function as a general deterrent. This is crucial in this case. There are hundreds of maritime training schools and individuals across the nation that are certified by the Coast Guard to teach the required training courses for merchant mariner credentials. And the Coast Guard Investigative Service has

informed that Stackpoole's conduct here, of undermining and disregarding the Coast Guard's course training requirements and regulations, and falsifying documents and records to pass and certify failing students, is a recurring problem not only here in the Great Lakes Central Region, but nationwide.  The Coast Guard's enforcement activities and related criminal prosecutions like this one are widely discussed in the maritime community.  Therefore, the sentence in this case has great potential to deter the conduct of others who are currently or might contemplate engaging in misconduct akin to that of the defendant, and send a message that there are significant consequences for violating the rules and regulations of, and otherwise defrauding, the United States Coast Guard.

**(3) The kinds of sentences available and**
**(4) The sentencing range established by the Guidelines**

Knowing Falsification of a Record with the Intent to Impede the Proper Administration of a Matter Within the Jurisdiction of the Executive Branch of the United States, in violation of 18 U.S.C. § 1519, is a Class C felony punishable by up to twenty (20) years of imprisonment, followed by up to three years of supervised release, and/or a fine not to exceed $250,000.00.

The Probation Department's calculation of the sentencing guidelines places the defendant in Zone B of the sentencing table.  Under the applicable guideline provision, the "minimum term" of the defendant's advisory guideline range (here 8 months) may be satisfied as follows:

(1) a sentence of imprisonment;

(2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one month is satisfied by imprisonment; or

(3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).

USSG § 5C1.1(c).

Calculation of the sentencing guidelines with the addition of the § 3B1.1(c) Aggravated Role enhancement and removal of the § 4C1.1 Zero-Point Offender adjustment would place the defendant in Zone D of the sentencing table. Under the applicable guideline provision, the "minimum term" of the defendant's advisory guideline range "shall be satisfied by a sentence of imprisonment." USSG § 5C1.1(f).

**(5) Pertinent policy statements issued by the Sentencing Commission**

The Government is unaware of any pertinent policy statement issued by the United States Sentencing Commission.

**(6) The need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct**

According to the Judiciary Sentencing Information Network (JSIN), with regard to the guidelines as calculated by the Probation Department:

> During the last five fiscal years (FY2020-2024), there were 8 defendants whose primary guideline was §2J1.2, with a Final Offense Level of 11 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 3 defendants (38%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 12 month(s) and the median length of imprisonment imposed was 8 month(s).

And with the application of the Aggravated Role enhancement, which, in turn, eliminates the Zero-Point Offender adjustment, as agreed to by the parties:

> During the last five fiscal years (FY2020-2024), there were 14 defendants whose primary guideline was §2J1.2, with a Final Offense Level of 15 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 8 defendants (57%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 15 month(s) and the median length of imprisonment imposed was 15 month(s).

(https://jsin.ussc.gov/analytics/saw.dll?Dashboard, last visited December 11, 2025).

**(7) The need to provide restitution**

Restitution is not a consideration in this matter.

## RECOMMENDATION

Having considered the factors set forth in 18 U.S.C. § 3553(a), the Government respectfully recommends a custodial sentence at or near the midpoint

10

of the guideline range. The Government further recommends that the Court impose the employment-related special condition recommended by the Probation Department during any term of supervision: that the defendant must have all employment pre-approved by the Probation Department, must not prepare or assist in the preparation of any MMC testing, certification or licensing, nor be employed and/or volunteer at a location where MMC licensing classes are being offered.

        Respectfully submitted,

        JEROME F. GORGON JR.
        United States Attorney


*/s/ Corinne M. Lambert*
Corinne M. Lambert
Special Assistant U.S. Attorney
211 West Fort, Suite 2001
Detroit, Michigan 48226
(313) 226-9129
Corinne.Lambert@usdoj.gov

Timothy J. Wyse
Assistant United States Attorney

Dated: December 11, 2025

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 11, 2025, I filed the foregoing electronically via the CM/ECF system, which will send notification of such filing to counsel of record:

Dennis A. Johnston
Johnston Karam Associates
43550 Elizabeth Road Suite 100
Clinton Township, MI 48036-4807
586-465-8500
dennisjohnstonlaw@gmail.com

A copy was also provided to Probation Officer Julie M. Grewe via email.

                                                  *s/Corinne M. Lambert*
                                                  CORINNE M. LAMBERT